1  MICHAEL A. JACOBS (State Bar No. 111664)
   MJacobs@mofo.com
2  JEREMIAH M. LEVINE (State Bar No. 288377)
   JLevine@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  MICHAEL T. RISHER (State Bar No.: 191627)
   MRisher@aclunc.org
7  LORI SHELLENBERGER (State Bar No. 154696)
   LShellenberger@mac.com
8  ACLU FOUNDATION OF NORTHERN CALIFORNIA, INC.
   39 Drumm Street
9  San Francisco, CA 94111
   Telephone: 415.621.2493
10 Facsimile:  415.255.8437

11 STUART NAIFEH (State Bar No. 233295)
   SNaifeh@demos.org
12 DEMOS
   80 Broad Street, 4th Floor
13 New York, NY 10004
   Telephone: 212.485.6055
14 Facsimile: 212.633.2015

15 Attorneys for Plaintiffs
   LEAGUE OF WOMEN VOTERS OF CALIFORNIA,
16 ACCE INSTITUTE, CALIFORNIA COMMON CAUSE
   and NATIONAL COUNCIL OF LA RAZA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF CALIFORNIA, ACCE INSTITUTE, CALIFORNIA COMMON CAUSE, and NATIONAL COUNCIL OF LA RAZA,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN P. KELLY, California Secretary of Transportation, JEAN SHIOMOTO, Director of California Department of Motor Vehicles, and ALEX PADILLA, California Secretary of State,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. The National Voter Registration Act of 1993 (NVRA) was enacted to increase the number of eligible citizens who vote by making it easier and more convenient for people to register to vote. The NVRA is often referred to as the "Motor Voter Act" because of the central role departments of motor vehicles are expected to play in registering and updating voters' registrations.

2. The NVRA mandates that an application to obtain or renew a driver's license or state identification card must also serve as an application to register to vote. The voter-registration portion may not require any information that duplicates information in the driver's license portion, with the exception of a signature and attestation that the applicant meets the eligibility requirements. The law further requires that a change of address form submitted for a driver's license or identification card also serve to update a voter's registration address with respect to elections for federal office, unless the registrant states on the form that the change of address is not for voter registration purposes.

3. California is failing to comply with these requirements because its Department of Motor Vehicles (DMV) fails to provide eligible voters with the integrated application process required by law when they renew their driver's licenses by mail. Instead, eligible voters in these circumstances must fill out a completely separate form if they want to register to vote or stay registered to vote. The duplicative form asks applicants to again provide information that they have already given to the DMV including the applicant's name, driver's license number, Social Security Number, date of birth, and address. Plaintiffs first asked the State to come into compliance with the NVRA more than two years ago. Since that time, Plaintiffs have been working with DMV and California Secretary of State Alex Padilla to ensure that DMV's in-person driver's license application and renewal process and DMV's online driver's license-renewal process comply with the NVRA.

4. However, DMV has consistently refused to provide NVRA-compliant voter registration services to customers who renew their driver's licenses by mail.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
la-1347905

1

5. As a result of Defendants' ongoing NVRA violations, Plaintiffs League of Women Voters of California, ACCE Institute, California Common Cause, and National Council of La Raza have been forced to expend resources on providing registration assistance to California citizens rather than on other activities related to their organizational missions. Moreover, the members of these organizations have been denied the opportunity to register to vote in violation of the NVRA.

6. Plaintiffs therefore bring this lawsuit seeking declaratory and injunctive relief to require the State and State officials charged with implementing and enforcing the NVRA to fulfill their obligations to all prospective California voters.

## PARTIES

**A.   Plaintiffs**

7. **League of Women Voters of California**:  Plaintiff League of Women Voters of California (League) is a non-profit, non-partisan organization whose mission is to encourage informed and active participation in government by all eligible voters. The League has over 60 California chapters that perform voter registration outreach at community events, and relies heavily on volunteers to perform these and other services. The League believes that its membership of 7,478 individuals includes persons who have sought to renew a driver's license or a state identification card by mail and are eligible to vote but unregistered, or who need to update their voter registration.

8. As a result of Defendants' ongoing violations of the NVRA, the League continues to expend staff and volunteer time and other organizational resources—resources that could have been spent on other League activities—assisting eligible voters with voter registration when those eligible voters should have been offered NVRA-compliant voter registration services by DMV. The League also continues to suffer harm to the extent that it is forced to budget future resources for voter registration services not being provided by DMV.

9. But for Defendants' violations of the NVRA, the League would not have expended resources, and would not have to budget for and expend future resources, to help eligible voters register to vote. Instead, the League would have used those resources, and would have budgeted

1  in the future, to conduct other activities such as community outreach, education, and direct
2  advocacy on local and statewide ballot initiatives and direct advocacy before local and state
3  government agencies to build the organization and further its mission and goals.

4    10.   The League's members also continue to suffer harm when they attempt to renew a
5  driver's license or a state identification card by mail and wish to register or update their voter
6  registration data.

7    11.   These injuries to the League and its members will continue so long as Defendants
8  fail to ensure compliance with their obligations under the NVRA.

9    12.   **ACCE Institute**: Plaintiff ACCE Institute (the 501(c)(3) arm of the Alliance of
10  Californians for Community Empowerment) is a non-profit community organization that helps
11  California citizens organize and take action to promote change that benefits social, economic, and
12  racial justice. ACCE has offices in Los Angeles, Contra Costa, Oakland, San Francisco,
13  Sacramento, and San Diego. ACCE believes that its membership of approximately 14,000
14  includes persons who have sought to renew a driver's license or a state identification card by
15  mail, and are either eligible to vote but unregistered or who need to update their voter registration
16  information.

17    13.   As a result of Defendants' actions, ACCE has been forced to and continues to
18  expend resources to promote voter registration in California that ACCE would otherwise have
19  used to further other organizational goals. In 2016, ACCE ran five programs that registered
20  nearly ten thousand Californians. This effort took considerable time, staff, and money. It also
21  consumed resources that ACCE would otherwise have spent educating voters about the dozens of
22  local and statewide ballot initiatives that California voters faced last year. Because of
23  Defendants' actions, ACCE is forced to budget for similar future voter registration efforts that
24  will also divert resources that would otherwise be dedicated to voter education.

25    14.   ACCE's members also continue to suffer harm when they attempt to renew a
26  driver's license or a state identification card by mail and wish to register or update their voter
27  registration data.

28

15. **California Common Cause**:  Plaintiff California Common Cause (Common Cause) is a non-profit grassroots advocacy organization that seeks to promote public participation in government and to ensure that public officials and institutions are accountable and responsible to all citizens.  They have offices and staff in Los Angeles, Sacramento, and Oakland, California.  Common Cause believes that its membership of approximately 100,000 individuals includes persons who have sought to renew a driver's license or a state identification card by mail, and are either eligible to vote but unregistered or who need to update their voter registration information.

16. Common Cause has been forced to divert resources to promote voter registration in California as a result of Defendants' actions.  In 2014 and 2016, Common Cause used resources to do voter registration in high schools and on college campuses across California.  Common Cause will be forced to budget for the ongoing diversion of financial and volunteer resources to promote voter registration in California as a result of Defendants' actions.  This diversion means that Common Cause has fewer resources to spend on, among other things, public policy analysis and lobbying, targeted voter outreach, voter protection, and local and state ballot initiatives.  But for Defendants' violations of the NVRA, Common Cause would not have had to expend these resources, nor would it be forced to budget for or expend these resources in the future.

17. Common Cause members also continue to suffer harm when they attempt to renew a driver's license or a state identification card by mail and wish to register or update their voter registration data.

18. **National Council of La Raza**:  Plaintiff National Council of La Raza (NCLR) is a non-profit national civil-rights and advocacy organization that seeks to improve opportunities for Latinos throughout the United States.  NCLR has regional offices in California and 62 affiliated community-based organizations in the state.  During election cycles, when prospective voters' attentions turn more to the possibility of voting, NCLR deepens its efforts to engage voters and encourage voting.  This work is particularly important since Latinos are a young population, and a large segment will be the first in their families to vote.

19. In 2016, NCLR worked in high schools and through its network of California service providers to register hundreds of Californians to vote. This effort took time, staff, and money that would otherwise have been spent educating voters and encouraging voter turnout and civic engagement.

**B.     DEFENDANTS**

20. **Brian Kelly, Secretary of Transportation**: Defendant Kelly is the Secretary of the California State Transportation Agency, which oversees the DMV.

21. **Jean Shiomoto, Director of DMV**: Defendant Shiomoto is the Director of the DMV.

22. **Alex Padilla, Secretary of State**: Defendant Padilla is the California Secretary of State and is designated as the "chief State election official" responsible for ensuring California's compliance with the NVRA. 52 U.S.C. § 20509

23. All defendants are named solely in their official capacities.

## JURISDICION AND VENUE

24. This case arises under the NVRA, a law of the United States. This Court has subject matter jurisdiction of this action pursuant to 52 U.S.C. § 20510(b)(2) (civil actions arising under NVRA) and 28 U.S.C. § 1331 (federal question jurisdiction).

25. This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

26. This Court has personal jurisdiction over each of the Defendants because each is a citizen of the State of California.

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

### The Purpose and Requirements of the NVRA

28. Congress enacted the NVRA to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b).

29. In furtherance of that purpose, Section 5 of the NVRA requires that all "motor vehicle driver's license applications (including renewal applications) submitted to the appropriate State motor vehicle authority under State law shall serve as an application for voter registration with respect to elections for Federal office unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504(a)(1). If the voter is already registered, the driver's license application or renewal must allow the voter to "update any previous voter registration by the applicant." 52 U.S.C. § 20504(a)(2). Under the NVRA, the term "motor vehicle driver's license" includes "any personal identification document issued by a State motor vehicle authority," a definition which also encompasses all state-issued non-driver identification cards. 52 U.S.C. § 20502. These NVRA voter registration services required during applications or renewals must be provided regardless of the means of interaction with DMV, including by mail or other remote means.

30. Section 5 requires that the driver's license or identification card application (including the renewal application) must allow the applicant to register to vote as a seamless part of the application process. 52 U.S.C. § 20504(c)(1). The voter-registration portion of the application "may not require any information that duplicates information required in the driver's license [or identification card] portion of the form," with the exception of a signature and other information necessary to prevent duplicate voter registrations and enable State elections officials to assess eligibility and administer voter registration and other parts of the election process. 52 U.S.C. § 20504(c)(2)(A).

31. In addition, Section 5 requires that the voter-registration portion of an application state each eligibility requirement, contain an attestation under penalty of perjury that the applicant meets each such requirement, describe the penalties for submission of a false voter registration application, and notify the applicant that a declination to register to vote will remain confidential. 52 U.S.C. § 20504(c)(2)(C)-(D).

32. Section 5 also requires that a change of address form submitted for a driver's license or identification card shall also serve as a change of address for voter registration purposes

with respect to elections for federal office unless the registrant states otherwise on the form.  52 U.S.C. § 20504(d).

33. Under Section 5, the completed voter-registration portion of an application or any change of address must be transmitted to appropriate election officials within ten days of acceptance or, if within five days before the deadline to register to vote in an election, within five days.  52 U.S.C. § 20504(e).

34. Thus, Section 5 of the NVRA requires that the DMV provide a voter-registration opportunity concurrently and seamlessly with any driver's license or state-issued identification card application, renewal, or change of address, including those submitted by mail.  Furthermore, any additional information required for voter registration must be non-duplicative and necessary to enable election officials to assess eligibility and administer the election process.

**Plaintiffs Have Provided Notice and Tried to Address These Problems with Defendants, but the State Has Refused to Comply with the Law.**

35. On February 5, 2015, Plaintiffs' counsel sent a letter to Defendant Secretary of State Alex Padilla (attached hereto as Exhibit A), in order to provide "written notice of the violation to the chief official of the State," as required by the NVRA.  52 U.S.C. § 20510(b)(1).  Plaintiffs' counsel sent copies of the letter to Defendants Secretary of Transportation Brian Kelly and DMV Director Jean Shiomoto, as well as to California Governor Edmund G. Brown.  Defendants have failed to correct certain NVRA violations identified in the notice letter within the 90-day notice period, allowing Plaintiffs to bring this civil action.  52 U.S.C. § 20510(b)(2).

36. Not only have Defendants failed to correct the NVRA violations within the statutorily prescribed 90-day notice period, they take the position that their current voter-registration practices comply with the NVRA.  Accordingly, an actual and substantial controversy exists between Plaintiffs and Defendants over whether Defendants' DMV voter registration practices violate the NVRA, and a judicial determination of the rights and obligations of the parties is appropriate.

**California's Current and Ongoing Violations of Section 5 of the NVRA**

37.     California and the State officials responsible for implementing and enforcing the NVRA are failing California citizens and violating the above-described provisions of the NVRA. Indeed, in 2013, the state's own watchdog, the State Auditor, found that DMV's practice of offering voter registration through a separate voter registration affidavit that required duplicative information already provided to DMV was not in compliance with the NVRA.[1]

38.     California's driver's license renewal and change of address procedures violate Section 5 of the NVRA as detailed below:

**California's Failure To Comply with the Requirements that a Driver's License Application Serve as an Application for Voter Registration and not Require Duplicative Information.**

39.     Section 5 requires that a driver's license application "serve as an application for voter registration" unless the applicant fails to sign the voter-registration application. The voter registration application "may not require any information that duplicates information required in the driver's license portion of the form," with a few minor exceptions. California's mail renewal process fails to comply with both of these requirements.

40.     In California, shortly before an individual's driver's license or identification card is set to expire, the DMV sends the individual a DL 6/DL 6C Renewal by Mail/Internet form (attached hereto as Exhibit B) prompting the individual to renew their license or identity card.[2] The mailing also includes a separate, blank voter registration form (attached hereto as Exhibit C). Individuals who want to register to vote must complete and return this separate voter registration form. The voter registration form requires duplicative information already provided to the DMV, including the individual's name, address, and date of birth, and also requests a driver's license number. Since the individual has already provided this information to the DMV, it is duplicative

---

[1] *See* California State Auditor, SECRETARY OF STATE: IT MUST DO MORE TO ENSURE FUNDS PROVIDED UNDER THE FEDERAL HELP AMERICA VOTE ACT ARE SPENT EFFECTIVELY, Report 2012-112 (April 2017), at 31-34, available at http://www.auditor.ca.gov/pdfs/reports/2012-112.pdf

[2] Every third renewal must be conducted in person, in which case, the DMV sends a renewal notice on DMV form DL 73.

1  for the individual to provide the information again on a voter registration form.  Failing to provide
2  a simultaneous, non-duplicative voter registration process when applicants renew a driver's
3  license violates the NVRA.

4      41.    Defendants' failure to provide an NVRA-compliant by-mail renewal process
5  harms numerous Californians each year.  More than one million Californians renew their driver's
6  licenses by mail each year.  For example, in fiscal year 2013-2014, DMV reported that 1,359,086
7  Californians renewed their driver's license by mail.[3]  For fiscal year 2014-2015, DMV reported
8  that 1,253,941 Californians renewed their driver's license by mail.[4]  In fiscal year 2015-2016,
9  DMV reported 1,071,338 persons did so.[5]

10      42.    DMV imposes unnecessary and burdensome hurdles on the subset of these renewal
11  applicants who wish to register to vote, in violation of the NVRA.  Each month, DMV continues
12  to send thousands more license-holders renewal-by-mail notices that impose the same
13  unnecessary burden.  All such individuals have been harmed by Defendants.  Even those who did
14  register or update their registrations were forced to spend additional time doing so than they
15  would have if the State were in compliance with the law.  Moreover, those who were deterred
16  from registering or updating their voter registration may not engage in a DMV transaction that
17  offers voter registration services for another five years.

18      **NVRA Violations Negatively Impact Voter Registration**

19      43.    The voter registration data California and other states submit to the U.S. Election
20  Assistance Commission (EAC) show the positive effect that compliance with the NVRA has on
21  voter registration.  Specifically, EAC data show that states such as Michigan and Delaware that

---

[3] *See* State Department of Motor Vehicles, Customers Eligible To Renew Their License Via Alternative Services Fiscal Year 2013-2014, available at https://www.dmv.ca.gov/portal/dmv/detail/about/dmv_performs/trans_vol_2013_2014_dl

[4] *See* State Department of Motor Vehicles, Customers Eligible To Renew Their License Via Alternative Services Fiscal Year 2014-2015, available at https://www.dmv.ca.gov/portal/dmv/detail/about/dmv_performs/trans_vol_2014_2015_dl

[5] *See* State Department of Motor Vehicles, Customers Eligible To Renew Their License Via Alternative Services Fiscal Year 2015-2016, available at https://www.dmv.ca.gov/portal/dmv/detail/about/dmv_performs/trans_vol_2015_2016_dl

comply with the Act have substantially higher rates of overall voter registration than California and have registered a higher percentage of voters through their DMVs than California.[6]

44. For example, during the 2011-12 election cycle, 85% of Michigan and 78% of Delaware voter registration applications came from motor vehicle departments; nationwide, the rate was 32%. But in that same reporting period, a mere 14% of voter registrations in California were submitted through the DMV.

45. California's failure to comply with the NVRA may have contributed to the state's overall low voter-registration rate. As of 2014—the last year that comprehensive data are available—the federal census reported that California ranked a dismal 46th in the nation in voter registration.[7]

46. These data show the importance of bringing California into full compliance with the law. California has made significant improvements in NVRA compliance over the last two years, that, although there is no updated state-by-state DMV analysis, may well have begun to reduce the disparities in California's registration rate when compared to other states. However, the fact remains that as of February 10, 2017, more than 5.5 million Californians who are eligible to vote remain unregistered.[8] When more than one million people renew their driver's licenses by mail each year, the potential impact of the state's failure to offer NVRA-compliant voter registration services to that population cannot be ignored.

**PLAINTIFFS WERE INJURED AS A RESULT OF CALIFORNIA'S VIOLATIONS OF THE NVRA**

47. Defendants' violations of Section 5 of the NVRA will cause irreparable injury to members of Plaintiffs ACCE Institute, California Common Cause, and the League of Women

---

[6] U.S. Elections Assistance Commission, THE IMPACT OF THE NATIONAL VOTER REGISTRATION ACT OF 1993 ON THE ADMINISTRATION OF ELECTIONS FOR FEDERAL OFFICE 2011-12 at 41 (2013), *available at* https://www.eac.gov/assets/1/28/EAC_NVRA%20Report_lowres.pdf

[7] See http://www.census.gov/library/publications/2015/demo/p20-577.html table 4a.

[8] See California Secretary of State, Odd Numbered Year Report of Registration, available at http://elections.cdn.sos.ca.gov/ror/ror-pages/ror-odd-year-2017/hist-reg-stats.pdf

Voters of California by depriving them of the opportunity to register to vote or update their registrations in accordance with the NVRA each time they engage in a driver's license or identification card transaction, and by subjecting them to the risk that they will be deprived of the opportunity to vote.

48. Plaintiffs ACCE Institute, California Common Cause, the League of Women Voters of California, and National Council of La Raza will suffer irreparable injury as a result of Defendants' violations of the NVRA because they will continue to be forced to divert resources to register voters who should have been registered through the DMV and to budget for future diversion for the same reason.

49. Plaintiffs have no adequate remedy at law for the Defendants' violation of their rights.

50. Injunctive and declaratory relief are therefore required to remedy Defendants' violation of the NVRA and to secure ongoing compliance with the NVRA.

## CLAIMS FOR RELIEF

### First Cause of Action

**(Violation of 52 U.S.C. § 20504(a), (c))**

51. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 53 as if fully set forth herein.

52. The NVRA requires states to incorporate the opportunity to register to vote in elections for Federal office as a seamless part of a renewal of a State motor vehicle driver's license. The voter-registration application portion of the renewal application may not require any information that duplicates information required in the driver's license portion of the form; moreover, it may require only the minimum amount of information necessary to prevent duplicate voter registrations and to enable State election officials to assess the eligibility of the applicant and administer voter registration and other parts of the election process, with limited exceptions. 52 U.S.C. § 20504(c).

53. Defendants have violated and continue to violate 52 U.S.C. § 20504(a) and (c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order:

(i) Declaring, under 28 U.S.C. § 2201 and 52 U.S.C. § 20510(b)(2), that the Defendants are violating Section 5 of the NVRA by failing to provide simultaneous voter registration and required voter registration services through DMV offices;

(ii) Permanently enjoining the Defendants, their agents and successors in office, and all persons working in concert with them, from implementing practices and procedures that violate Section 5 of the NVRA;

(iii) Directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all appropriate measures necessary to remedy the harm caused by their non-compliance with Section 5 of the NVRA, including, without limitation, ensuring that individuals affected by Defendants' non-compliance with Section 5 of the NVRA are provided immediate opportunities to register to vote or update their voter registration;

(iv) Directing the Defendants, under a court-approved plan with appropriate reporting and monitoring requirements, to take all steps necessary to ensure ongoing compliance with the requirements of Section 5 of the NVRA, including, without limitation, training and monitoring personnel to ensure that DMV is offering simultaneous voter registration with every driver's license or State identification card application and renewal without requiring any information that duplicates information in the driver's license or identification card portion of the application;

(v) Awarding the Plaintiffs the cost and disbursements incurred in connection with this action, including, without limitation, reasonable attorneys' fees, expenses, and costs pursuant to the NVRA, 52 U.S.C. § 20510(c);

(vi) Retaining jurisdiction over this action to ensure that the Defendants are complying with all their obligations under the NVRA; and

///

...

     (vii)   Awarding such other equitable and further relief as the Court deems just and proper.

Dated: May 9, 2017

MICHAEL A. JACOBS
JEREMIAH M. LEVINE
MORRISON & FOERSTER LLP

By:   */s/ Michael A. Jacobs*
       MICHAEL A. JACOBS

Attorneys for Plaintiffs
LEAGUE OF WOMEN VOTERS OF CALIFORNIA, ACCE INSTITUTE, CALIFORNIA COMMON CAUSE, NATIONAL COUNCIL OF LA RAZA